IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

ANGELA CASCIANO-SCHLUMP,

Plaintiff,

v.

JETBLUE AIRWAYS CORP.,

Defendant.

CIVIL NO. 17-2196 (GAG)

**OPINION AND ORDER**

This case concerns the alleged loss of a valuable jewelry roll following a flight from Boston, Massachusetts to San Juan, Puerto Rico. Angela Casciano-Schlump ("Plaintiff") brings this action against JetBlue Airways Corp. ("Defendant/JetBlue"), alleging breach of contract of carriage. (Docket No. 2). Presently before the Court is Defendant's Motion for Summary Judgement. (Docket No. 59.) Defendant After reviewing the parties' submissions and pertinent law, the Court **DENIES** Defendant's Motion for Summary Judgment.

**I.   Relevant Factual Background**

Plaintiff Angela Casciano Schlump ("Plaintiff") is an experienced flyer who has flown commercially for many years. (Docket Nos. 58, ¶ 1; 64, ¶ 1). Plaintiff, a resident of Puerto Rico, purchased an e-ticket through Defendant's website for a flight departing September 13, 2016 from Boston, Massachusetts to San Juan, Puerto Rico. (Docket No. 2 ¶¶ 1, 9, 10). Through the ticket purchase, Plaintiff became a party to Defendant's Contract of Carriage. Id.

Plaintiff has purchased airfare on multiple occasions through JetBlue's website. (Docket Nos. 58, ¶ 3; 64, ¶ 3). Once a purchase on the website is completed the client receives a confirmation

**Civil No. 17-2196 (GAG)**

number. (Docket Nos. 58, ¶ 4; 64, ¶ 4). Plaintiff, upon completion of the transaction, checked a box agreeing to the terms and conditions or "fine print." (Docket Nos. 58, ¶ 5; 64, ¶ 5). Plaintiff claims she could not read the terms as the font was too small. Id. JetBlue further avers that their confirmation email and subsequent check in email makes passengers aware of their policies, which are additionally available on their website. (Docket Nos. 58, ¶ 5; 64, ¶ 5). A Contract of Carriage is "incorporated by reference" in JetBlue's tickets. (Docket No. 58, ¶ 6; 64, ¶ 6). Plaintiff notes that there is no link to the Contract of Carriage on the ticket provided in evidence. (Docket No. 64, ¶ 7).

JetBlue's carry-on baggage policy conditions that passengers must be able to place their items in the overhead bin, in the case that assistance is not available and when the item is unable to sit under the seat in front of them. (Docket No. 58, ¶ 13; 64, ¶ 13). Plaintiff avers that she is, and was at the time, physically able to place her items in the overhead compartment herself. (Docket No. 64, ¶ 13). JetBlue presents that its Contract of Carriage permits the airline to additionally restrict carry-on items as circumstances may require, further claiming that all bags are "subject to being checked." (Docket No. 58, ¶ 14; 64, ¶ 14). Plaintiff qualifies such, alleging that a flight attendant needs a valid reason to require a customer to get check their bag. (Docket No. 64, ¶ 14). The Contract of Carriage additionally states that "baggage checked at the Gate will be subject to the same restrictions *and liability limits* as baggage checked at the ticket counter." Id. at ¶ 15 (emphasis ours). Furthermore, the Contract of Carriage conditions that "Passengers are required to carry such valuable items personally." (Docket No. 58, ¶ 17; 64, ¶ 17).

In June 2016, Plaintiff traveled from Puerto Rico to the continental United States. (Docket No. 58, ¶ 23; 64, ¶ 23). In September 2016, Plaintiff arranged to return to Puerto Rico and purchased a one-way ticket. (Docket No. 58, ¶ 25; 64, ¶ 25). Prior to flying, on the same day, Plaintiff packed a jewelry roll inside a carry-on bag. (Docket No. 58, ¶ 29; 64, ¶ 29). Upon arriving to the airport,

**Civil No. 17-2196 (GAG)**

Plaintiff was provided wheelchair assistance. (Docket No. 58, ¶ 31; 64, ¶ 31). She checked one piece of luggage, and kept one small, carry-on compliant roller bag and a purse to bring with her on the plane. (Docket No. 2, ¶¶ 13, 16). Among other things, the carry-on bag allegedly contained a jewelry roll that included "an antique white sapphire necklace and earrings, a single short strand of mikimoto pearls, a long double strand of pearls with diamond clasp, three pairs of earrings—gold and silver, antique silver gray bead necklace with earrings, antique garnet necklace with earrings, and an onyx ring with center diamond." Id. ¶14. Here is where the facts diverge as Plaintiff and Defendant present two varying versions of the subsequent events.

Plaintiff's carry-on received a secondary inspection at the TSA Security Checkpoint. (Docket No 58, ¶ 32; 64, ¶ 32). In her deposition, Plaintiff states that she "could see her Roller Bag while the TSA secondary inspection was being conducted." (Docket No. 64, ¶ 33). While Defendant imply Plaintiff did not have had a clear view as she was seated in the wheelchair, the bag was on a "high table and the agents had their backs to her." (Docket No. 58, ¶ 33). Once the secondary inspection was completed Plaintiff proceeded towards her gate. (Docket No. 58, ¶ 34; 64, ¶ 34). Upon boarding the flight, Plaintiff was told that she would have to check her carry-on bag. (Docket No. 58, ¶ 35; 64, ¶ 35). Plaintiff claims she was given no reason as to why her bag would need to be checked; Defendant aver that she was "advised" that her carry on was to be checked as "it would not fit under the seat in front of her and she could not be provided assistance to put it in the overhead bin." (Docket No. 58, ¶ 35; 64, ¶ 35). Plaintiff claims, counter to Defendant's assertion, that the carryon bag did in fact fit under the seat in front of her. (Docket No. 58, ¶ 36; 64, ¶ 36). Additionally, Plaintiff states that she was capable herself of placing the bag in the overhead compartment without assistance. (Docket No. 64, ¶ 37). The bag was subsequently checked. (Docket No 58, ¶ 40, 41; 64, ¶ 40, 41).

3

**Civil No.  17-2196 (GAG)**

Upon landing, Plaintiff retrieved the carry on at the baggage claim carrousel in San Juan, Puerto Rico. Id. On the same, September 13, 2016, day Plaintiff filed a claim with JetBlue as her walker had not arrived in San Juan. (Docket No 58, ¶ 44; 64, ¶ 44). It wasn't until the following day that Plaintiff opened the carry-on bag, which is when she allegedly discovered that her valuables had been stolen. (Docket No 58, ¶ 46; 64, ¶ 46).

Plaintiff filed a claim with TSA on September 15, 2016, regarding the missing valuables. (Docket No 58, ¶ 47; 64, ¶ 47). She additionally sent a letter to her insurance agent Mr. Paco Arríví expressing her intention to pursue an action against the TSA and JetBlue. (Docket No 58, ¶ 48; 64, ¶ 48).  Plaintiff later contacted JetBlue on September 16, 2019. (Docket No 58, ¶ 49; 64, ¶ 49). Defendant claims that, Plaintiff did not make mention of her claims against the TSA. Id. Plaintiff counters that she had in fact notified JetBlue as to the TSA claim. Id. The TSA claim was ultimately dismissed.  (Docket No 58, ¶ 50; 64, ¶ 50).  Defendant claim that Plaintiffs TSA action failed as there were "no legal sustainable grounds," as to liability. Plaintiff qualifies that there is potential video evidence of the TSA search. (Docket No 58, ¶ 51; 64, ¶ 51).  The TSA instructed Plaintiff to seek further review if she contested its determination. (Docket No 58, ¶ 52; 64, ¶ 52). Plaintiff did not contest TSA's determination. Id. In turn, Plaintiff contacted JetBlue's CEO and expressed that she believed she had been the victim of a scam, which targeted elderly and disabled passengers. (Docket No 58, ¶ 53; 64, ¶ 53). Defendant denies such. Id.

II.     **Standard of Review**

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter

**Civil No.  17-2196 (GAG)**

of law." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); see FED. R. CIV. P. 56(a). "An issue is genuine if 'it may reasonably be resolved in favor of either party' at trial, . . . and material if it 'possess[es] the capacity to sway the outcome of the litigation under the applicable law.'" Iverson v. City of Boston, 452 F.3d 94, 98 (1st Cir. 2006) (alteration in original) (internal citations omitted).

The moving party bears the initial burden of demonstrating the lack of evidence to support the non-moving party's case. Celotex, 477 U.S. at 325. "The burden then shifts to the nonmovant to establish the existence of at least one fact issue which is both genuine and material." Maldonado-Denis v. Castillo-Rodriguez, 23 F.3d 576, 581 (1st Cir. 1994). The nonmovant may establish a fact is genuinely in dispute by citing evidence in the record or showing that either the materials cited by the movant "do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." FED. R. CIV. P. 56(c)(1)(B). If the Court finds that a genuine issue of material fact remains, the resolution of which could affect the outcome of the case, then the Court must deny summary judgment. See Anderson, 477 U.S. at 248.

When considering a motion for summary judgment, the Court must view the evidence in the light most favorable to the nonmoving party and give that party the benefit of any and all reasonable inferences. Id. at 255. Moreover, at the summary judgment stage, the Court does not make credibility determinations or weigh the evidence. Id. Summary judgment may be appropriate, however, if the nonmoving party's case rests merely upon "conclusory allegations, improbable inferences, and unsupported speculation." Forestier Fradera v. Municipality of Mayaguez, 440 F.3d 17, 21 (1st Cir. 2006) (quoting Benoit v. Tech. Mfg. Corp., 331 F.3d 166, 173 (1st Cir. 2003))

**III.  Discussion**

Defendant argues that plaintiff received reasonable notice of the Contract and Carriage, and as a consequence her claims must be dismissed. (Docket No. 59 at 9).  Additionally, Defendant

5

**Civil No.  17-2196 (GAG)**

asserts that JetBlue's "exclusion of liability is valid and enforceable," and as such, "Plaintiff is not entitled to any reimbursement or compensation from JetBlue." (Id. at 1).

The First Circuit has noted the validity of liability limitation in a contract of carriage. "Although traditional common law forbade a carrier from disclaiming liability for its own negligence, the released value doctrine allows an air carrier to 'limit [its] liability for injury, loss, or destruction of baggage on a 'released valuation' basis.'" Kemper Ins. Cos. v. Fed. Express Corp., 252 F.3d 509, 512 (1st Cir. 2001) (internal citations and emphasis removed). While carriers have a wide latitude to include liability limitations, such limitations are not absolute when there is intentional theft. "'Nothing short of intentional destruction or conduct in the nature of theft' will void the limitation on liability."; Kemper Ins. Cos. v. Fed. Express Corp., 252 F.3d 509, 515 (1st Cir. 2001) (citing Am. Cyanamid Co. v. New Penn Motor Express, Inc., 979 F.2d 310, 315-16 (3d Cir. 1992)

Additionally, the First Circuit has remarked upon and acknowledged liability-limitation-related contractual promises, "namely a promise that the passenger might personally monitor the safety of the valuables by carrying them in the cabin." See Hill Constr. Corp. v. Am. Airlines, 996 F.2d 1315, 1319 (1st Cir. 1993) (citing Coughlin v. Trans World Airlines, Inc., 847 F.2d 1432 (9th Cir. 1988). "One might read the liability limitation as conditioned on fulfillment of that promise." Id. In Coughlin the Ninth Circuit found that

> [a]n air carrier may limit its liability for loss or destruction of luggage, *provided the carrier allows the passenger to protect her luggage by either carrying it on board or purchasing excess valuation insurance*. These terms are interdependent: if the carrier is to limit its liability, it must allow alternative means of protecting the transported items.

Coughlin v. Trans World Airlines, Inc., 847 F.2d 1432, 1433 (9th Cir. 1988) (citing Deiro v. American Airlines, Inc., 816 F.2d 1360, 1365 (9th Cir. 1987); Klicker v. Northwest Airlines, Inc.,

**Civil No. 17-2196 (GAG)**

563 F.2d 1310, 1315-16 (9th Cir. 1977). The First Circuit highlighted that as the carrier in <u>Coughlin</u> did *not* permit the passenger to carry the ashes, it failed to satisfy the condition, and the liability limitation did not take effect. <u>Hill Constr. Corp. v. Am. Airlines</u>, 996 F.2d 1315, 1319 (1st Cir. 1993).

In the present case JetBlue's contract of carriage provides that "Passengers are required to carry [] valuable items personally." (Docket No. 58, ¶ 17; 64, ¶ 17). Section 18(F) of JetBlue's Contract of Carriage states

> Carrier will not accept for carriage *medicines*, *money*, checks, securities, *jewelry* (including watches), wigs, cameras, video, audio and other *electronic equipment* (including computers, software or music devices), CDs, DVDs, automotive parts, boat parts, silverware, optical equipment (including contact lenses), *dental and orthodontic devices or equipment*, *keys*, negotiable papers, securities, business documents, samples, items intended for sale, paintings, antiques, artifacts, manuscripts, animal antlers, furs, irreplaceable books, *writing instruments*, heirlooms, collector's items or publications *and similar valuables contained in checked or unchecked baggage. Passengers are encouraged to carry such valuable items personally* . . . Carrier reserves the right to require the passenger to sign a limited liability release before accepting any such items for transportation. In the case of domestic transportation, if any valuable items of the type described in this paragraph are lost, damaged, or delayed, Passenger will not be entitled to any reimbursement or compensation from Carrier, whether or not a limited liability release has been signed by Passenger.

<u>See</u> Docket No. 58 -5 at 23 (emphasis ours). As a carrier JetBlue has the right to limit its liability. However, it does not possess the authority to bar all liability. As discussed above intentional destruction or conduct in the nature of theft will void the limitation on liability. <u>Kemper</u>, 252 F.3d at 515 (1st Cir. 2001). In <u>Kemper</u> the First Circuit highlighted that as plaintiff failed to allege that the air carrier "appropriated the [valuables] *itself,* or profited from its conversion, the claim does not fit within the doctrine," which exclude liability. However, distinct from <u>Kamper</u>, in the case at hand

7

**Civil No. 17-2196 (GAG)**

Plaintiff is alleging intentional theft and that JetBlue did appropriate her valuables. Thus, the validity of the Carriers Contact limited liability provisions are in question.

Furthermore, there is a crucial factual disparity between both Plaintiff and Defendant's narration of events. Plaintiff adamantly claims that her valuables were in her bag when they were removed from her possession to be checked. Defendant on the other hand counters and undermines Plaintiff's assertion and point to the fact that her bag was subject to a secondary inspection by TSA, in which her valuables *may* have been removed without her knowledge. It appears to the Court that we are in a Schrödinger's cat paradox, in which Plaintiff's valuables were both inside and not inside her bag at the point in which the bag was checked. This is a crucial factual disparity between the parties that must be resolved by a jury and not via summary judgement. The Court cannot make a judgment as to the veracity of Plaintiff's claims that she was able to observe the TSA secondary check and did not view an item being removed. Furthermore, both Plaintiff and Defendant allude to a security video of the TSA secondary screening that may support Plaintiff's claims. (Docket No 58, ¶ 51; 64, ¶ 51). More-so, Plaintiff claims she informed the flight attendant that her jewelry was in her bag and wished for the bag to remain with her under the seat. (Docket No. 68 at 5). Plaintiff continues that "despite [her] strong objections and despite knowledge that the [her] jewelry was in the bag," the flight attendant insisted on checking the bag. Id. As such, the Court finds that there is an issue of fact as to whether JetBlue Breached its Contract of Carriage.

Such a controversy ignites "an issue is genuine if 'it may reasonably be resolved in favor of either party' at trial, . . . [which] 'possess[es] the capacity to sway the outcome of the litigation under the applicable law.'" Iverson v. City of Boston, 452 F.3d 94, 98 (1st Cir. 2006) (alteration in original) (internal citations omitted). Furthermore, had Plaintiff's jewelry been removed prior to JetBlue checking her bag the issue as to whether there was any violation rendering the Contact of Carriage

8

**Civil No. 17-2196 (GAG)**

liability limitations would become moot. Had Plaintiff's jewelry not been in the bag at the moment it was gate checked then there would be no violation and JetBlue would be free of all liability. This is not for the Court to decide and is a matter best left to the jury to determine.

### IV. Conclusion

For the reasons stated above, the Court **DENIES** Defendant's Motion for Summary Judgment. (Docket No. 59).

**SO ORDERED.**

In San Juan, Puerto Rico, on this 27th day of August, 2019.

>       *s/ Gustavo A. Gelpí*
>       GUSTAVO A. GELPI
>       United States District Judge